[Cite as *Garcia v. Samano*, 2019-Ohio-3223.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| JESSICA GARCIA, | : | |
| Appellant, | : | CASE NO. CA2018-05-094 |
| - vs - | : | O P I N I O N<br>8/12/2019 |
| | : | |
| MANUEL GARCIA SAMANO, | : | |
| Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR16-11-1125


Arnold Law Firm, LLC, Brittany N. Born, 8833 Chapelsquare Lane, Suite C, Cincinnati, Ohio 45249, for appellant

Manuel Garcia Samano, 2305 Dixie Highway, Hamilton, Ohio 45011, pro se


**RINGLAND, J.**

{¶ 1} Appellant, Jessica Garcia, appeals from the decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing marital property after her divorce from appellee, Manuel Garcia Samano. For the reasons detailed below, we affirm.

{¶ 2} Jessica and Manuel married in 2009. On November 22, 2016, Jessica filed a complaint for divorce. The trial court held final hearings in September and October of 2017.

This appeal largely concerns the division of marital property associated with Garcia One, LLC and other real property owned or sold during the marriage.

{¶ 3} Jessica testified that she and Manuel owned Garcia One, a car dealership or "buy here-pay here lot" during the course of the marriage. Jessica stated that "we sold cars and we also fixed them, like a mechanic shop." The parties disagreed on how the business was run, with Jessica alleging that Manuel did not do "anything really legitimately" and that the business was run with unaccounted cash. Due to bad record keeping, Jessica was unable to keep internal books on the business or pay out expenses. Jessica also described certain questionable business practices, such as instances in which she purportedly notarized unsigned titles and an instance in which she was held personally liable in a matter after Manuel repossessed a vehicle sold by the company. Jessica testified that she stopped working for Garcia One due to these business practices.

{¶ 4} Manuel stated that he was a part owner of Garcia One. However, similar to Jessica's testimony, Manuel's description of the business was extremely vague and inconsistent. Manuel testified that there was no written partnership agreement, just an oral agreement amongst themselves. Manuel testified that the rent for the business premises was paid by whichever partner could pay at the time, but they were "probably" going to be evicted because "no one has paid" the rent. When one of Manuel's alleged partners testified, he denied any ownership interest in Garcia One, but suggested that Manuel might have "considered" him a part owner due to a prior familial relationship. As of the time of the final hearing, Manuel testified that he no longer receives "anything" from the company. As to his involvement in the company, Manuel stated that he doesn't work there anymore, but will sometimes go there to visit friends. However, this contradicted Manuel's earlier testimony in which he stated that he would still occasionally fix a vehicle for the company for cash.

{¶ 5} In addition to the disputes regarding the business, the parties also raise multiple

- 2 -

issues with regard to certain real properties. Manuel testified about multiple properties that he owned during the marriage, including properties which were sold within weeks of the filing of the complaint for divorce. In total, Manuel sold six properties between October and November 2016, shortly before Jessica filed her complaint for divorce.

{¶ 6} Following its review of the evidence, the trial court divided the parties' marital property and entered a final decree of divorce. Jessica now appeals the trial court's decision regarding several aspects of the property division, raising three assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN THE DIVISION OF MARITAL ASSETS.

{¶ 9} In her first assignment of error, Jessica argues the trial court erred by failing to include all relevant property owned by the parties in the decision dividing their marital property. Jessica's argument is without merit.

{¶ 10} Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Smith v. Smith*, 12th Dist. Clermont No. CA2016-08-059, 2017-Ohio-7463, ¶ 8. Initially, pursuant to R.C. 3105.171(B), "the court shall * * * determine what constitutes marital property and what constitutes separate property." An appellate court reviews the trial court's classification of property or debt as marital or separate under the manifest-weight-of-the-evidence standard. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8.

{¶ 11} Jessica maintains the trial court erred by failing to include additional property in the initial marital property classification. Specifically, Jessica alleges Manuel is a part owner of Garcia One. Additionally, Jessica claims that Manuel failed to disclose certain real property to the trial court and the trial court failed to consider other property the parties owned, including a tow truck.

{¶ 12} We find the trial court's classification of the parties' marital property is supported by the manifest weight of the evidence. The trial court noted that neither Jessica nor Manuel were "particularly credible as far as how they made a living prior to separation." Though Manuel stated that he had an ownership interest in Garcia One, the record is exceedingly sparse as to any details or consequences of that purported ownership interest or if said ownership interest was a going concern. Both parties' respective testimonies reflect a failure to comprehend the nature or structure of the business. Manuel stated that there is no written partnership agreement with respect to the company and "[t]hat is the problem. It's just an oral agreement so whenever it's time to pay the rent, no one has money to pay the rentals." There is also confusion as to who owns the business, or if the business retains any value. Jessica admits that she previously worked for the company where Manuel failed to do "anything really legitimately" and operated solely in cash. Manuel testified that Garcia One does not own the real property where the business operates and that they were "probably" going to be evicted due to the failure to pay rent. Manuel also testified that he "isn't receiving anything" from Garcia One, but will stop by occasionally to visit with friends or fix a vehicle for cash.

{¶ 13} Jessica places emphasis on the testimony of David Wood, an investigator with the State of Ohio Bureau of Motor Vehicles, who testified that Manuel is the owner of Garcia One. However, Wood testified that his knowledge was related to a prior 2013 proceeding. Wood expressly stated that he had no reason to look at the ownership records since that time.

{¶ 14} In short, given the exceedingly limited, vague, and contradictory evidence presented to the trial court, we find it appropriate that the trial court would find neither party credible as to the ownership of Garcia One and therefore exclude it from the division of marital property. We similarly find that Jessica's remaining arguments are without merit as to

property located at 21 Kelly Court and a tow truck. The record of the ownership of those interests were disputed by the parties with the trial court below. As the trial court was in the best position to weigh the credibility of the witnesses and resolve conflicts in the evidence, we will not reverse unless the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The trial court did not clearly lose its way in classification of the parties' marital property. Jessica's first assignment of error is overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED IN NOT FINDING THAT HUSBAND EXERCISED FINANCIAL MISCONDUCT.

{¶ 17} In her second assignment of error, Jessica asserts that the trial court erred by not finding that Manuel engaged in financial misconduct. We disagree.

{¶ 18} Findings as to whether a party has engaged in financial misconduct are reviewed pursuant to the manifest-weight-of-the-evidence standard. *Robinson v. Robinson*, 12th Dist. Warren No. CA2012-11-118, 2013-Ohio-4435, ¶ 14. Under this standard, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Id.*, quoting *Eastley* at ¶ 20. The burden of proving financial misconduct is on the complaining party. *Smith*, 2017-Ohio-7463 at ¶ 10.

{¶ 19} The term "financial misconduct" has a specific meaning and is defined in R.C. 3105.171(E)(4). Pursuant to that provision, financial misconduct includes, but is not limited to "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." *Robinson* at ¶ 12. Financial misconduct implies some type of wrongdoing such as

interference with the other spouse's property rights (i.e., wrongful scienter). *Taub v. Taub*, 10th Dist. Franklin No. 08AP-750, 2009-Ohio-2762, ¶ 33; *White v. White*, 5th Dist. Licking No. 15-CA-54, 2016-Ohio-2997, ¶ 13, citing *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 23. In cases of financial misconduct, "typically, the offending spouse * * * either profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets." *Taub* at ¶ 33; *Mikhail v. Mikhail*, 6th Dist. Lucas No. L-03-1195, 2005-Ohio-322, ¶ 28.

{¶ 20} In this case, both parties have repeatedly accused the other of fraudulent or illegal activity throughout the marriage and the pendency of this divorce. As previously noted, Manuel conveyed six properties to various individuals within weeks of Jessica's complaint for divorce. Jessica alleges that she was unaware of these conveyances and testified that she did not release her dower rights on these properties. As part of her case, Jessica introduced exhibits including appraisal values of the properties. Nevertheless, although Jessica notes that Manuel conveyed six properties, she only addresses three such conveyances in her brief:

| Property | Sale Price | Appraisal Value |
|---|---|---|
| 252 Hanover Street | $8,000 | $12,200 |
| 1437 See Avenue | $10,000 | $30,320 |
| "A third property"[1] | $10,000 | $32,610 |

Jessica argues the conveyances by Manuel were intended to defraud her and the trial court erred by failing to include the properties in the recapitulation index or decree.

{¶ 21} After considering the evidence, we again conclude the trial court's decision is supported by the manifest weight of the evidence. While Jessica alleges that she had no knowledge of the sales and generally complains of Manuel's fraudulent activities, there was dispute between the parties as to the sale price and appraisal value that the trial court

---

1. Jessica did not provide the address for the "third property."

considered in entering final judgment. In this case, Manuel disputed the appraised values and argued that some of the properties were in poor condition, including the Hanover Street property, which he described as missing windows and "still a lot of things missing" and not habitable. Manuel also described the See Avenue property as a "destroyed property." Furthermore, Manuel also presented the testimony of Jorge Romero, who testified that he purchased three of the properties. Romero explained that he transacted business with both Jessica and Manuel "in a parking lot" and paid cash for the properties. Romero testified that both Jessica and Manuel appeared pleased with the sales and "were dying to get some money."

{¶ 22} Though we recognize that transacting real estate business in cash "in a parking lot" is peculiar, the testimonies of both Jessica and Manuel indicate that their financial dealings often lack transparency. Both parties testified that many of their dealings involve strictly cash transactions that were largely unexplained or not coherently established before the trial court. Under the circumstances, we are unable to determine whether any financial misconduct occurred, or whether Jessica was indeed in agreement with these real estate transactions. As a result, we find that Jessica has not met her burden of proving financial misconduct. Jessica's second assignment of error is overruled.

{¶ 23} Assignment of Error No. 3:

{¶ 24} THE TRIAL COURT ERRED BY MAKING AN INEQUITABLE AWARD CONCERNING THE DISPOSITION OF CERTAIN PROPERTY.

{¶ 25} In her third assignment of error, Jessica argues the trial court erred by making an inequitable division of property. Jessica's argument is without merit.

{¶ 26} As noted in Jessica's first assignment of error, property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Smith*, 2017-Ohio-7463 at ¶ 8. After the initial step of classifying the property as separate or marital,

"the court shall disburse a spouse's separate property to that spouse" and divide the marital property equally. R.C. 3105.171(C)(1) and (D). However, if the court finds an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. R.C. 3105.171(C)(1); *Roberts v. Roberts*, 12th Dist. Clinton Nos. CA2012-07-015 and CA2012-07-016, 2013-Ohio-1733, ¶ 34. The trial court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54. To find abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 27} Similar to her second assignment of error, Jessica alleges that Manuel attempted to deceive the trial court by transferring properties to family members at a reduced cost and therefore the trial court should have valued the respective properties based on their appraised values instead of sale price. Therefore, Jessica argues that since the incorrect values were assigned to the properties, the trial court's division of marital property was inequitable.

{¶ 28} However, as noted earlier, Jessica failed to sustain her burden of proof with respect to any financial misconduct or fraud related to the sale of the properties. The trial court's recapitulation index and final decree show that the court considered matters of credibility in fashioning the final property division, despite the extraordinary inconsistencies of the parties. We find the trial court did not abuse its discretion in its equitable division of marital property. As a result, Jessica's third assignment of error is overruled.

{¶ 29} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.